# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

September 24, 2020

**BY ECF**

Hon. Stewart D. Aaron, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> *Re:*   ***Sanango v. Trattoria Tre Colori, Inc., et al.***
> ***Case No. 19-CV-8534 (SDA)***

Dear Judge Aaron,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants' counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

### I.   *The Need for the Court's Approval of the Agreement*

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Stewart D. Aaron, U.S.M.J.
September 24, 2020
Page 2

## II.     The Parties

### a.     *Defendants*

Defendants own and operate an Italian restaurant in Manhattan, doing business as Trattoria Tre Colori (the "Restaurant"). The Restaurant is temporarily closed due to COVID-19, and it is unknown if or when operations will resume.

### b.     *Plaintiff*

Plaintiff alleges that he was hired in or about October 2017 to work as a busboy at the Restaurant. Plaintiff worked continuously for the defendants in that capacity until on or about August 15, 2019.

Although plaintiff's work-shift fluctuated slightly each week, he alleges typically working between forty-five (45) and fifty-five (55) hours per week, with one (1) to two (2) days per week consisting of double shifts (*i.e.*, both lunch and dinner shifts), which exceeded ten (10) hours in a single day. According to plaintiff, the lunch shift consisted of four (4) hours from 11:00 a.m. until 3:00 p.m.; and the dinner shift consisted of seven (7) hours Monday through Thursday from 4:00 p.m. until 11:00 p.m., and eight (8) hours Friday through Sunday from 4:00 p.m. until 12:00 a.m.

With respect to his pay, plaintiff alleges that he was paid on a per shift basis consisting of $15 per lunch shift, and $20 per dinner shift. If plaintiff only worked a single dinner shift, he was paid $25 for that shift. Plaintiff contends that his hourly rate of pay typically averaged between $3.50 and $4.50 depending on the number of shifts worked and how much he was paid for the week.

Defendants admit that plaintiff was paid on a per shift basis up until November 25, 2018. Thereafter, the defendants contend that they installed a punch clock machine, and paid plaintiff on an hourly basis at the "tip credit" minimum wage rate of $10 per hour. Plaintiff disputes this contention and maintains that he never punched a time-clock while working for the defendants.

## III.     Defendants' Defenses/Positions

Defendants raise various defenses. First, the defendants contend that plaintiff did not commence his employment until December 18, 2017. Second, according to the defendants, plaintiff worked on average about forty-three and one-half (43½) hours per week. Defendants further maintain that the work shifts within the restaurant consisted of 11:00 a.m. to 4:00 p.m. (lunch) and 4:00 p.m. to 10:00 p.m. (dinner). Defendants contend that if plaintiff worked a double-shift, it consisted of 11:00 a.m. until 9:30 p.m., or 11:00 a.m. until 10:00 p.m. (on Friday or Saturday), with a thirty-minute meal break.

With respect to his pay, the defendants admit that plaintiff was paid on a per shift basis up until November 25, 2018. Thereafter, the defendants contend that they installed

a punch clock machine, and paid plaintiff on an hourly basis at the "tip credit" minimum wage rate of $10 per hour, and the appropriate overtime rate when applicable.[1] According to the defendants, plaintiff's tip records indicate that plaintiff understood that the defendants were claiming a tip credit against plaintiff's hourly rate of pay. Thus, according to the defendants, the period of potential damages is limited to less than one (1) year between December 2017 and November 2018.

Plaintiff disputes this contention and maintains that he never punched a time-clock while working for the defendants, and does not believe that the defendants were entitled to pay plaintiff at the reduced tip credit minimum wage as a matter of law because the defendants failed to provide proper notice that the tip credit was being taken, and because his regular rate of pay fell below that afforded to tipped employees under the Regulations. Plaintiff also disputes being paid at the rate of time and one-half for hours worked in excess of forty (40) in any given week.

### IV.     *Plaintiff's Calculated Damages*

Plaintiff calculated that he is owed approximately $23,000 in unpaid minimum wage and overtime compensation, with an equal amount in liquidated damages. Plaintiff further estimates approximately $1,200 in unpaid "spread of hours" premiums and, together with statutory damages for the defendants' alleged failure to provide wage notices and statements, the total value of plaintiff's claims amount to slightly more than $57,000.

Defendants calculate plaintiff's maximum recovery at approximately $17,000, exclusive of liquidated damages.

### V.     *Settlement Amount*

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $25,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) days after the Court approves the Agreement and dismissed the action with prejudice.

### VI.     *The Agreement is Fair and Reasonable*

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a

---

[1] Defendants did produce some, albeit limited, time and payroll records that appear to show plaintiff being paid at the tip credit minimum wage and at time and one-half for overtime hours worked. Plaintiff disputes their veracity.

mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached subsequent to mediation with Julien Friedman, Esq., and as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

Moreover, one concern tending toward settlement is plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant, which is currently closed as a result of COVID-19. It is unknown if or when it will continue operating in the future. Forcing the defendants into protracted litigation and/or obtaining a larger judgment after trial runs the real risk of the defendants filing for bankruptcy protection or simply defaulting on payment.

In light of the various disputes discussed above, this settlement should be approved. By settling now, plaintiff receives a significant portion of his calculated unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial.

### VII.    *Application for Attorneys' Fees*[2]

Pursuant to this firm's retainer agreement with plaintiff (copy attached), our firm will retain one-third the net proceeds of the settlement after the firm's costs (filing fee and service). Therefore, plaintiff's counsel seeks $8,139.85 in fees, and $578 in costs for a total application of $8,717.85, which is below the firm's lodestar.

Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the

---

[2] Defendants do not take any position regarding plaintiff's request for attorneys' fees because that issue was not subject to the parties' settlement negotiations.

relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have previously been approved as reasonable for several years. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016). Attached hereto is a copy of Cilenti & Cooper, PLLC's billing records for work performed on this matter.

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Hon. Stewart D. Aaron, U.S.M.J.
September 24, 2020
Page 6

    We thank the Court for considering this application.

                          Respectfully submitted,

                          Justin Cilenti

cc: Defense Counsel (by ECF)